IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FRANCIS PHILLIPPI HARKER,<br><br>Defendant. | No. 2:21-cr-132 |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING AND MOTION FOR ACCEPTANCE OF RESPONSBILITY DECREASE**

The United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, and Joseph DePadilla and E. Rebecca Gantt, Assistant United States Attorneys, offers the following with respect to the sentencing factors under 18 U.S.C. § 3553(a) and the U.S. Sentencing Guidelines ("USSG"). There are no unresolved objections, and the Presentence Investigation Report ("PSR") calculates the defendant's advisory guidelines range as 46 to 57 months of imprisonment, resulting from an offense level of 23 and criminal history category of I.

The government submits that a sentence of imprisonment of 57 months, the high end of the advisory guidelines range, would be sufficient but no greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a). The defendant possessed multiple firearms—including a semi-automatic rifle—while using illegal drugs, and lied about that drug use when he purchased the firearms. Disturbingly, he procured the semi-automatic rifle on the same day that he discussed an operation with an online associate involving trapping and killing law enforcement officers at a shopping center in Virginia Beach. He engaged in numerous other activities on the Internet involving violent, racially-motivated extremism, particularly focused

against law enforcement officers. And while employed in the National Guard, he stole blank COVID-19 vaccination cards and mailed them to associates.

## I. Procedural Background

On November 17, 2021, the grand jury returned a single count indictment charging the defendant with possession of a firearm by an unlawful user of controlled substances, in violation of 18 U.S.C. §§ 922(g)(3) & 924(a)(2). ECF No. 3. The defendant was ordered detained following a detention hearing, and has been in federal custody since his arrest on November 19, 2021. ECF Nos. 7, 11, 13.

On January 10, 2022, the defendant entered a plea of guilty before United States Magistrate Judge Douglas E. Miller to the indictment, pursuant to a plea agreement. ECF Nos. 19, 21. On July 11, 2022, the U.S. Probation Office filed a PSR which calculated the offense level as 23 and the defendant's criminal history category as I, yielding a guidelines range of 46 to 57 months of imprisonment. ECF No. 32.

## II. Motion to Grant the Defendant Additional One-Level Decrease for Acceptance of Responsibility

The defendant has assisted authorities in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. USSG § 3E1.1(b). The PSR has properly applied a two-level decrease in his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and the defendant's offense level prior to the operation of that section is level 16 or greater. Accordingly, the United States moves this Court to apply an additional one-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b). This reduction is already reflected in the PSR's offense level calculation. PSR ¶ 28.

### III. Standards Governing Sentencing

In fashioning a criminal sentence, a district court must "first calculate the applicable [U.S. Sentencing] Guidelines range." *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007). After calculating the guidelines range, the district court "must give both the government and the defendant 'an opportunity to argue for whatever sentence they deem appropriate.'" *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). The district court must then consider all of the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by either party. *Id*. (citing *Gall*, 552 U.S. at 49). In doing so, the district court may not presume that a sentence within the guidelines range is reasonable. *Id*. (citing *Gall*, 552 U.S. at 50); *see also Nelson v. United States*, 555 U.S. 350, 351–52 (2009). Rather, the court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.

In the event that the district court imposes a sentence outside the guidelines range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Pauley*, 511 F.3d at 473 (quoting *Gall*, 552 U.S. at 50). After deciding an appropriate sentence, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The Fourth Circuit has also held that "a sentencing court must address the parties' nonfrivolous arguments in favor of a particular sentence, and if the court rejects those arguments, it must explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017).

## IV. The Statutory Sentencing Factors

### A. The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))

The defendant first came to the FBI's attention because of an alarming conversation he had online in the early stages of the COVID-19 pandemic. Specifically, as detailed in the Statement of Facts, he and another individual discussed their frustration with curfews and roadblocks enforced by law enforcement as COVID-19 precautionary measures. Statement of Facts (hereinafter "SOF") ¶ 2. They talked how about how they might "interrup[t] an unjust stop," and wanting to "go full Dorner." *Id.* This was a reference to Christopher Dorner, who in 2013 murdered law enforcement officers and other individuals. *Id.* n.1. The defendant discussed how they might ensure law enforcement officers were "pinned down." *Id.* ¶ 2. The other individual prepared a diagram of a shopping center in Virginia Beach showing how responding officers would be blocked from escape, **Exhibit 1**, and the defendant responded that the diagram "looks good" and stated that the "fact that vehicles won't be able to negotiate the terrain is really good." SOF ¶ 2.

The defendant immediately took action in furtherance of this plan. The same day as that conversation, he went to a pawn store in Virginia Beach and purchased a semi-automatic rifle. SOF ¶ 3. The defendant later claimed to the FBI that it was merely coincidental that he purchased the rifle the same day. PSR ¶ 9. That rifle is depicted in **Exhibit 2**; as shown there, the defendant had outfitted it with a sight, and when it was located at his residence by the FBI the following year, it also was fully loaded with a magazine. *Id.*; PSR ¶ 11.

Further investigation, including a review of the defendant's online social media accounts and his own admissions, revealed that the defendant purchased this and other firearms, namely another rifle and a handgun, at the same time that he was regularly using Schedule 1 controlled

4

substances. SOF ¶¶ 4, 6. When the FBI executed a search warrant at his residence, they found those other two firearms in his room, and illegal controlled substances including LSD. *Id.* ¶ 5. Despite this drug use, when he purchased the semi-automatic rifle and the handgun, the defendant falsely attested on the required applications that he was not user of or addicted to any controlled substances. *Id.* ¶¶ 3, 5.

Although it was the defendant's simultaneous possession of firearms and use of illegal controlled substances that form the basis of his single count of conviction, this conduct was just the tip of the iceberg. First, he was (by his own admission) repeatedly "engaging in online extremism," as he put it in a June 2021 text in which he mocked "ni**as in the pen [i.e., prison]." **Exhibit 3**. Specifically, he was interested in extremism involving white supremacism, and also violence, especially directed towards law enforcement. Images he possessed include a blood-spattered image emblazoned with the words "RAPE THE COPS," **Exhibit 4**, and an image of himself doing a Hitler salute and apparently mocking those who would oppose such an act as "racist bigots," **Exhibit 5**. The defendant also had imagery stating "there is no god but Hitler." PSR ¶ 9. He also admitted to interacting online with members of a group called The Base, which the defendant described as a "group interested in terrorism."[1] PSR ¶ 10. He said he had found the group through following an online channel called iAryanism. *Id*.

The search warrant executed at the defendant's residence in November 2021 revealed yet additional evidence of his extremist activities endorsing violence. In a backpack in the trunk of his car, he had four beer bottles filled with Styrofoam, socks for wicks, and alcohol—components

---

[1] Publicly-filed documents by other defendants further describe The Base as "a neo-Nazi group that aims to unify militant white supremacists around the globe and provide them with paramilitary training in preparation for a 'race war,'" *United States v. Barasneh*, No. 20-cr-26 (E.D. Wisc.) (Dkt. No. 31) (Plea Agreement), at 3, and document The Base's extensive use of the Internet to promote its mission, *id.*, *see also United States v. Mathews*, No. 8:20-cr-33 (D. Md.) (Dkt. No. 156) (Plea Agreement) at 12.

for a Molotov cocktail. **Exhibit 6**. Agents created replicas of these items and found that although they did not explode with the alcohol, when gasoline was added the bottle exploded. **Exhibit 7**. The report of the test explains that Styrofoam and gasoline together create a substance similar to Napalm. *Id.*

The search warrant also revealed a stack of approximately 100 blank COVID-19 vaccination cards in defendant's room. **Exhibit 8**. The defendant admitted he had stolen them when he was employed in the National Guard and part of a COVID-19 task force. PSR ¶ 11. He further admitted to mailing 40–60 additional blank cards to his associates. *Id.*

B. The History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

The defendant is 22 years old. His background provides no explanation for the decisions that brought him before the Court. He was born in Georgia and moved with his parents to the Hampton Roads area of Virginia when he was very young. The defendant was raised in Hampton Roads, and graduated from Tallwood High School in Virginia Beach in 2018 with an advanced diploma. He reports having a good childhood, free of abuse, and that his parents provided him with all of his basic needs and with many opportunities as well. His parents are married and live in Norfolk; his mother is a librarian and his father is a naval architect. The defendant has one sibling, a younger brother, who also lives in Norfolk. The defendant has no children of his own.

The defendant attended half a semester of college in 2020. Since graduating high school, he has had a series of different jobs, including jobs in retail, in marketing, and in the service industry. Most notably in relation to his conduct giving rise to this case, he was active duty in the Virginia National Guard for several months in 2020[2] (and has since been discharged), and worked

---

[2] To the extent the defendant argues that such employment should be considered service to his country and a mitigating factor at sentencing, the government submits that allowing such an argument would discredit all of the uniformed servicemembers who seek to uphold the United States government and its laws rather than trying to subvert it. As noted, the defendant plotted

as an electrical apprentice at an electrical construction company in 2021, *see* **Exhibit 9** (discussing raping a female colleague in the "electrical room") until his arrest.

The defendant reports being in good physical health. While in custody at Western Tidewater Regional Jail, he was diagnosed with adult jaundice. The PSR does not disclose any reported history of psychological or psychiatric treatment, or any mental health diagnoses. The defendant did indicate he would be willing to speak with a therapist.

As indicated by his offense of conviction, the defendant has a history of substance abuse. He began drinking alcohol and using marijuana as a teenager and moved on to more serious substances in his early 20s, including cocaine, LSD, PCP, MDMA, and Psilocybin (a/k/a mushrooms). He has never had substance abuse treatment but expressed interest in the same.

The defendant has no prior criminal history outside of a reckless driving conviction in 2020. Accordingly, he has no criminal history points and is attributed with a criminal history category I.

C. The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment (18 U.S.C. § 3553(a)(2)(A))

A sentence at the high end of the advisory guidelines is warranted to reflect the seriousness of defendant's conduct. For nearly a year and a half, he possessed multiple firearms at the same time he was using illegal drugs like LSD. And the defendant procured firearms by lying about that drug use on government forms designed to ensure the public safety by preventing drug users from having guns. Additionally, the applicable guidelines for the defendant's crime of conviction do not account for many other egregious aspects of his conduct, described above, such as distributing

---

acts of violence against law enforcement officers while he was active duty in the National Guard. *Compare* PSR ¶ 64 *with* Statement of Facts ¶ 2. And, he told a friend that even his orders in the National Guard did not stop him "from doing a bunch of drugs." *Id.* ¶ 4. He also used his time in the National Guard to steal blank COVID-19 vaccination cards which he mailed to associates. PSR ¶ 11.

blank COVID-19 vaccination cards and plotting a violent extremist attack on law enforcement. The government thus submits that a sentence at the high end of the advisory guidelines range is appropriate to justly punish the defendant for his conduct.

D. The Need to Afford Adequate Deterrence & to Protect the Public from Further Crimes (18 U.S.C. § 3553(a)(2)(B), (C))

A substantial sentence of imprisonment is also warranted to protect the public by deterring the defendant from future criminal conduct. As evidenced by his text message mocking the FBI, his "RAPE THE COPS" imagery, and his discussion of a plan to trap law enforcement and go "full Dorner," the defendant has no respect for the law or for members of law enforcement. While a substantial sentence of imprisonment may or may not change that, it will at the least impress upon him the consequences of violating the law.

All of the defendant's conduct described above amply shows that he represents a danger to the public. In addition to planning to kill law enforcement officers, one of his messages shows a disturbing interest in violence towards his coworkers as well, specifically in raping one of the "el Salvador[e]an bi\*\*\*es." **Exhibit 9**.

E. The Need to Provide Needed Correctional Treatment in the Most Effective Manner (18 U.S.C. § 3553(a)(2)(D))

While incarcerated, the defendant would likely benefit from substance abuse treatment given his history of use of numerous illegal controlled substances. The government further recommends that he be assessed for any needed mental health treatment, and that he be provided with vocational opportunities to enhance employment opportunities following his release from incarceration.

    F.   The Kinds of Sentences Available (18 U.S.C. § 3553(a)(3))

The available statutory sentence for the defendant's crime of conviction, 18 U.S.C. § 922(g)(3), is up to ten years of imprisonment. 18 U.S.C. § 924(a)(2). A term of supervised release may be imposed for up to three years. 18 U.S.C. § 3583(b)(2). A sentence of probation is statutorily authorized, for up to five years. 18 U.S.C. § 3561.

    G.   The Sentencing Guidelines and Need to Avoid Unwarranted Disparities (18 U.S.C. § 3553(4)-(6))

The defendant is the sole defendant in this case. The government's recommended sentence is within the advisory guidelines range, which would serve to avoid unwarranted disparities with similarly-situated defendants. *See United States v. Parks*, Criminal Action No. 5:05-CR-00257-KDB-DCK, 2020 WL 6826214, at *3 (W.D.N.C. Nov. 20, 2020) ("One of the goals of the Sentencing Guidelines is to avoid national sentencing disparities amongst similar offenders with similar criminal conduct. *See, e.g.*, *United States v. Johnson*, 445 F.3d 339, 343 (4th Cir. 2006). Thus, the best way to avoid unwarranted sentencing disparities is for the district court to impose a sentence within the guidelines range.").

    H.   The Need to Provide Restitution to Victims of the Offense (18 U.S.C. § 3553(a)(7))

The defendant's offense of conviction does not mandate restitution, and there is not in any event any identified victim who has suffered a loss as the result of the defendant's conviction.

**V.    Supervised Release Conditions**

As indicated throughout this filing and exhibits attached hereto, the Statement of Facts, and the PSR, the defendant's conduct here was fueled by his repeated contact on the Internet with others who shared his violent extremist and racist ideology. The government thus recommends two special conditions of supervised release, one restricting such communications and one enforcing that restriction. The proposed condition restricting such communications is as follows:

> The defendant shall not: post on, or upload to, any Internet website; or transmit, by any electronic means, including but not limited to email and text messaging, and regardless of whether it is accessible by one or more than one person, any statements or other content, whether verbal, pictorial, or otherwise, that promotes or endorses violence, unlawful activity, or any groups that espouse such ideas. Violence as used in this paragraph means violence against persons because of their membership in a certain social group or race or because they are a law enforcement officer, or other bias-related violence. That includes forwarding, "liking," or otherwise endorsing such content posted or transmitted by others, in a way that is visible to others or that would tend to further disseminate such messages or content. The defendant shall not post *any* messages, photographs, or other content, on any website that promotes or endorses violence or unlawful activity, or that is maintained by an individual or group that publicly promotes or endorses violence or unlawful activity, regardless of the nature of the message or content. This restriction applies only to messages and communications that (1) target people because of their membership in a certain social group or race or because they are a law enforcement officer, (2) endorse bias-related violence, or (3) endorse unlawful activity.

And the second requested condition, which is necessary to enforce the above condition, would require the defendant to participate in a monitoring program operated by the U.S. Probation Office if he seeks to use or possess a computer or other device capable of connecting to the Internet, outside of any such computer or device owned and maintained by his employer for use in his employment.

These and similar conditions have been blessed by the courts of appeals in similar circumstances. Notably, in *United States v. Bolin*, the Second Circuit approved a similar set of conditions where the defendant was convicted of making a false statement. 976 F.3d 202 (2d Cir. 2020). Bolin had, among other things, expressed support online for a mass shooting, and also posted on Facebook "anti-Semitic, anti-Muslim, and racist statements, and sent messages conveying similar sentiments to members of a white supremacist Facebook group that he administered." *Id.* at 205. The defendant challenged these conditions on appeal. The Second Circuit looked to decision of other circuits allowing similar conditions, such as the Ninth Circuit

10

in *United States v. Ross* which approved of a condition requiring that the defendant refrain from associating with known neo-Nazi/white supremacist members. 476 F.3d 719, 721 (9th Cir. 2007).

As to the condition restricting speech endorsing violence, *Bolin* reasoned that "[t]he district court was properly of the view that interests of rehabilitation and public safety would be served by 'separating' Bolin from racist, anti-Semitic, anti-Muslim, and threating communications. We conclude that it could properly do so if the separation was accomplished by means well-focused enough to preserve those rights to free expression to which Bolin remained entitled." 976 F.3d at 213. Although *Bolin* ultimately disapproved of the condition because it had a definition of violence that swept too broadly, the condition proffered above adopts changes that the Second Circuit opined would pass constitutional muster. *Id.* at 216. It also adds in reference to violence against law enforcement officials to further tailor this restriction to defendant's conduct. Given all of the defendant's relevant conduct, this condition is necessary to protect the public and promote his rehabilitation.

As to the second requested special condition, *Bolin* approved of a similar condition as sufficiently tailored to the offense conduct given the defendant's "prior use of the internet to spread racial and religious hate and promote violence." *Id.* at 213. It noted that such a condition did not run afoul of *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), because it did not amount to a blanket ban on Internet use. The government has modified the condition approved in *Bolin* to create an exception for electronic devices at any place of employment. *See United States v. Shiraz*, 784 F. App'x 141, 144–45 (4th Cir. 2019) (striking down an Internet-monitoring condition as overbroad where it "applies to all computers to which Shiraz has access, which would presumably include computers owned by his employer which would also impact his ability to obtain employment"). Here, absent this condition the U.S. Probation Office would have virtually no tools

11

to ensure defendant abided by the condition prohibiting the defendant from communications endorsing violence, other than periodic searches of defendant's electronic devices.

To comply with the Fourth Circuit's decision in *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), and *United States v. Singletary*, 984 F.3d 341 (4th Cir 2021), the government requests that the Court orally pronounce all conditions of supervised release other than those specifically designated as mandatory under 18 U.S.C. § 3583(d). In addition to an oral pronouncement of the individual conditions, compliance with *Rogers* may be achieved by oral reference on the record to another document, such as the PSR. *Rogers*, 961 F.3d at 299. Here, the U.S. Probation Office has outlined its recommended supervised release conditions on pages 14 through 17 of the PSR.

## VI. Conclusion

For the reasons stated above, the government submits that a sentence of imprisonment of 57 months is sufficient, and not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____
Joseph DePadilla
E. Rebecca Gantt
Assistant United States Attorneys
Attorneys for the United States
VSB No. 83180
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel. - 757-441-6350
Fax - 757-441-6689
E-mail Address – joe.depadilla@usdoj.gov
rebecca.gantt@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record who are users of the CM/ECF system.

I further certify that on July 11, 2022, I will send an electronic copy of the foregoing to the following:

Latriston L. Cox<br>
United States Probation Officer

/s/
E. Rebecca Gantt
Assistant United States Attorney
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel. - 757-441-6350
Fax - 757-441-6689
E-mail Address – rebecca.gantt@usdoj.gov